IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY RUSSELL and ANTOINETTE RUSSELL, | ) ) ) | Civil Action No. 6:10-CV-3180-GAF |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **WHIRLPOOL'S SUGGESTIONS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| WHIRLPOOL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

This action arises from a fire that occurred on February 6, 2010, allegedly caused by an unknown defect in a refrigerator manufactured by Whirlpool. Whirlpool seeks summary judgment on all causes of action on the following grounds: First, Plaintiffs' do not have the required expert testimony to prove causation in the event this Court grants Whirlpool's Motion to Exclude Larry Giggy and/or Whirlpool's Motion to Exclude Carl Martin, both of which are incorporated herein by reference. Second, Plaintiffs' expert witnesses have been unable to identify any defect, either direct or circumstantially, with the subject refrigerator that existed at the time it left Whirlpool's hands. Third, Plaintiffs' expert witnesses did not properly exclude other potential causes of fire within the alleged area of origin before opining that the refrigerator was the cause of this fire.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. For the sake of judicial efficiency and convenience, and because of the interrelated nature of the two motions, Whirlpool incorporates the statement of facts from its Suggestions in Support of its Motion to Exclude Plaintiffs' Expert Larry Giggy [Doc. No. 62] as

if they were fully set forth herein.

2.  Plaintiffs have asserted three causes of action in their Complaint: (1) negligence; (2) breach of warranty; and (3) strict liability. [Doc. No. 1, ¶7.]

3.  Mr. Giggy conceded that he was <u>not qualified</u> to render opinions regarding an electrical defect in the refrigerator, and he is not offering any defect opinions. (Deposition of Larry Giggy, April 20, 2011, 9:3 – 12, **Exhibit A**).

4.  Additionally, Plaintiffs retained Carl Martin to inspect the refrigerator remains recovered from the fire scene, and conduct a preliminary inspection of the refrigerator. (Deposition of Carl Martin, April 21, 2011, 88:18 – 21, **Exhibit B**.)

5.  As a result of his inspections, Mr. Martin formed certain opinions that are contained in his October 27, 2010 Report. (October 27, 2010 Report of Carl Martin, **Exhibit C**.)

6.  Mr. Martin admitted that he was unable to identify a specific component part of the refrigerator that failed. (Martin Dep. **Exhibit B**, 80:16 – 81:4; 177:12-15.)

7.  And, Mr. Martin conceded that any damage he observed on the refrigerator could have been the result of the intensity of the fire rather than the cause of the fire. (**Exhibit B,** 90: 14-25.)

8.  Moreover, Mr. Martin admitted that he did not exclude other possible sources of the fire. (**Exhibit B**, 72:24 – 4 (Refrigerator electrical receptacle); 76:24 – 77:7 (house wiring).)

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure addresses motions for summary judgment. Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

2

4509093 v2
Case 6:10-cv-03180-GAF   Document 64   Filed 05/23/11   Page 2 of 11

law." Fed. R. Civ. 56(c). On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be drawn from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990). A court does not weigh the evidence to resolve disputed facts, but instead determines whether there are genuine issues of fact that must be resolved at trial. *See Heritage Constructors, Inc. v. City of Greenwood, Ark.*, 545 F.3d 599, 601 (8th Cir. 2008).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Mo., ex rel. Garstang v. U.S. Dep't of Interior,* 297 F.3d 745 (8th Cir.2002) (citations omitted). If a moving party carries its initial burden, the party opposing summary judgment must go beyond the pleadings, and by affidavits or by the "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a party bearing the burden of proof on an essential element of a claim does not make a sufficient showing on the element, the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

## LEGAL ARGUMENT

### I. EXPERT TESTIMONY IS REQUIRED

Under Missouri law, expert testimony is necessary in a product liability case where "the lay jury [does] not possess the experience or knowledge of the subject matter sufficient to enable them to reach an intelligent opinion without help," *Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1214 (8th Cir. 2006) (citations omitted); *see also Anderson v. Raymond Corp.*, 340 F.3d 520, 524-25 (8th Cir. 2003) (holding summary judgment proper under Arkansas law where plaintiff failed to produce expert testimony to prove lift truck was defectively designed and to

3

prove defendant's negligence because such testimony was needed for the jury.)

In *Pro Serv. Auto., L.L.C. v. Lenan Corp.*, the Eighth Circuit upheld the district court's grant of summary judgment when it affirmed the exclusion of plaintiff's expert for failing to satisfy the Rule 702 standards for admissibility, leaving the plaintiff "without the necessary exert testimony regarding causation. Therefore, the grant of summary judgment to [defendant] **must be affirmed**." 469 F.3d at 1216 (emphasis added).

Since Larry Giggy and Carl Martin, like the expert in *Pro Serv.*, failed to use reliable principles and methods to form their opinions, their causation opinions do not satisfy the Rule 702 standards for admissibility and should be excluded.[1] Without expert testimony regarding causation, Whirlpool will be entitled to judgment as a matter of law as Plaintiffs will not have the requisite expert testimony to prove the essential elements of the causes of action.

## II. PLAINTIFFS HAVE FAILED TO IDENTIFY A DEFECT IN THE REFRIGERATOR

In the event this Court does not exclude Mr. Giggy and/or Mr. Martin, Whirlpool is entitled to judgment as a matter of law because Plaintiffs have failed to identify a defect, either directly or circumstantially, in the refrigerator that caused this fire.

Plaintiffs have asserted three causes of action in against Whirlpool: (1) negligence; (2) breach of warranty; and (3) strict liability. (Doc. 1, ¶7.) All three of these causes of action require the Plaintiffs to prove a defect in the product that caused this fire. *See Dunn v. Nexgrill Indus.*, 636 F.3d 1049, 1057 (8th Cir. 2011) (citing *Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 671 (Mo. App. 2007)). "Proof that a plaintiff's damages were caused by a defect in the product is an essential element of a plaintiff's case under a product liability theory." *Hills v.*

---
[1] The arguments in support of the Motions to Exclude Mr. Giggy and Mr. Martine are filed at Doc. Nos. 61 & 62, and 65 & 66, respectively.

*Ozark Border Elec. Coop.*, 710 S.W.2d 338, 339 (Mo. Ct. App. 1986). "Failure of proof on an essential element of a claim entitles the moving party to judgment as a matter of law. *Fox v. T-H Cont'l Ltd. P'ship*, 78 F.3d 409, 413-15 (8th Cir. 1996) (holding, in a diversity case, that judgment as a matter of law in favor of employer was appropriate on employee's promissory estoppel claim where the employee's evidence did not establish each element of the state law claim)." *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1123-1124 (8th Cir. 2006).

### A. No Direct Evidence of Defect in Whirlpool Refrigerator

Plaintiffs have failed to establish any evidence to support a defect in the refrigerator.

#### 1) *Larry Giggy – No Evidence of Specific Defect*

Plaintiffs' fire origin and cause expert, Larry Giggy, would like to point to the refrigerator as the cause of this fire. However, Mr. Giggy lacks both the qualifications and any specific evidence of defect to support such a speculative conclusion. The best that Mr. Giggy could offer was that the refrigerator was located in his area of the fire origin.[2]

Mr. Giggy conceded that he was <u>not qualified</u> to render opinions regarding an electrical defect in the refrigerator, and he is not offering any defect opinions.

> Q. Are you offering any design defect opinions?
> A. I am not. <u>I'm not an electrical engineer</u>. I don't have claim to have any expertise in that area. . . .
> Q. Are you offering any manufacturing defect opinions?
> A. I am not, no.

(Deposition of Larry Giggy, April 20, 2011, 9:3 – 12, **Exhibit A**) (emphasis added).

#### 2) *Carl Martin – No Evidence of Specific Defect*

Aware of his limitations, Mr. Giggy sought the assistance of electrical engineer, Carl Martin. Mr. Martin was initially retained by Plaintiffs to inspect the refrigerator remains

---

[2] Whirlpool disagrees with the methodology Mr. Giggy used to reach an area of origin as fully briefed in its Motion to Exclude Larry Giggy [Doc Nos. 61 & 62].

recovered from the fire scene. Mr. Martin conducted a preliminary inspection of the refrigerator on or about October 20, 2010.

> Q. So October 27th, 2010, when you had written your report, the only physical evidence that you had looked at was the refrigerator?
> A. That is correct, and its components.

(Deposition of Carl Martin, April 21, 2011, 88:18 – 21, **Exhibit B**.)

Following the preliminary inspection, Mr. Martin was unable to identify a defect or failure within the refrigerator. In his report dated October 27, 2010, Mr. Martin formed the following "Conclusions":

> 1) The refrigerator does depict areas of distinguishable heat exposure that would not be expected. <u>There are two independent conditions identified that indicate that the fire may have originated from the compressor compartment area.</u> These conditions consisted of the rear metal panel burn patterns and metal thickness variations and the inside surface of the compressor.
>
> 2) Further invasive and destructive examination of the compressor components may provide additional information that could supplement a theory that the fire started in the lower compressor compartment area of the refrigerator.

(October 27, 2010 Report of Carl Martin, p. S-2, **Exhibit C**.)

The best Mr. Martin could do as of October 27, 2010, is point to some unknown possible failure in the compressor compartment where several of the refrigerator's components were located. A destructive examination of the compressor was held on November 12, 2010. Even following this examination, Mr. Martin was unable to identify a specific defect in the refrigerator. In his report dated November 18, 2010, Mr. Martin formed the following "Conclusions":

> 3) The most likely cause of the fire was an <u>electrical malfunction within the compressor compartment</u> of the refrigerator. The components associated with this malfunction were destroyed by fire.

(November 18, 2010 Report of Carl Martin, p. S-3, **Exhibit D**.)

6

4509093 v2
Case 6:10-cv-03180-GAF   Document 64   Filed 05/23/11   Page 6 of 11

When asked about the components in the compressor compartment, Mr. Martin explained that he was not able to identify which component specifically failed:

> Q. With regard to the power cord wiring, the compressor, the compressor relay and the fan motor, <u>are you able to identify which of those specific components failed</u>?
> A. <u>No.</u>

(Martin Dep., 80:16 – 81:4) (emphasis added).

> Q. . . . In the compressor compartment, you cannot identify what specifically failed and caused the fire?
> A. That is true.

(*Id.*, 177:12-15.)

The only other basis for selecting the refrigerator as the cause of this fire was Mr. Martin's observations of the product. However, Mr. Martin conceded that any damage he observed on the refrigerator could have been the result of the intensity of the fire rather than the cause of the fire.

> Q. Do you agree that some of the things that you had found [on the refrigerator] could also be explained by the heat intensity of a complete burn?
> A. It is possible. . . .

(*Id.*, 90:14 – 25.)

Plaintiffs cannot show there was anything wrong with the refrigerator. More importantly, they cannot trace the cause of this fire back to any defect in the refrigerator. Plaintiffs have no actual evidence of defect or malfunction to support their speculative opinions.

Because the Plaintiffs have presented no credible evidence upon which the trier of fact can base a reasoned choice on whether the refrigerator had a defect at the time of manufacture, any finding of causation would be in the realm of speculation and conjecture. *See, e.g., Shaffer*

7

*v. Amada America, Inc.*, 335 F. Supp. 2d 992, 998 (E.D. Mo. 2009) (citing *Crump v. MacNaught P.T.Y., Ltd.*, 743 S.W.2d 532, 534 (Mo. Ct. App. 1987). Consequently, Plaintiffs cannot establish an essential element of their causes of action, namely any type of defect with the subject refrigerator when it left the hands of the manufacturer. Whirlpool is therefore entitled to judgment as a matter of law on these causes of action. *Fox,* 78 F.3d at 413-15.

### III. PLAINTIFFS HAVE NOT ELIMINATED OTHER REASONABLE CAUSES OF THIS FIRE

#### A. Exclusion of Other Causes of the Fire

Missouri courts have uniformly held "evidence which points equally to a cause for which the defendants are responsible and to one for which the defendants are not responsible is not sufficient to make a case for submission to a jury." *Hale v. Advance Abrasives Co.*, 520 S.W.2d 656, 659 (Mo. App. 1975). Where the facts are equally consistent with innocence or fault, the verdict should be directed for defendant.

To "prove a product liability claim by inference from circumstantial evidence without proof of a specific defect, a plaintiff must offer evidence that (1) tends to eliminate other possible causes of the injury or property damage, (2) demonstrates that the product was in the same basic condition at the time of the occurrence as when it left the hands of the defendants, and (3) the injury or damage is of a type that normally would not have occurred in the absence of a defect in the product." *Hickerson v. Pride Mobility Products Corp.*, 470 F.3d 1252, 1258 (8th Cir. 2006) (citations omitted).

In *Fain v. GTE Sylvania, Inc.*, the court of appeals held that a jury could reasonably infer a product defect existed in the television that caused the fire through circumstantial evidence because plaintiff's expert reliably eliminated other possible causes at the fire origin. 652 S.W.2d

163, 165 (Mo. Ct. App. 1983); *see also Henderson v. W.C. Haas Realty Mgmt., Inc.*, 561 S.W.2d 382, 386 (Mo. Ct. App. 1977).

### 1) *Plaintiffs Have Failed to Properly Eliminate Other Reasonable Causes of the Fire*

The fire at the Russell residence completely consumed almost everything inside. Mr. Giggy improperly determined an area of origin in complete contradiction to NFPA 921. Even assuming *arguendo* that Mr. Giggy could identify an area of origin for the Russell fire, Plaintiffs have still failed to eliminate several potential ignition sources in his defined "area of origin," including the receptacle to which the refrigerator was plugged and the house wiring running throughout the house, including the wall behind the refrigerator.

#### a. The Refrigerator Receptacle

Plaintiffs are unable to exclude the receptacle that the refrigerator was plugged into and cannot eliminate it as a possible cause of this fire.

> Q. What have you done to eliminate the receptacle as a likely cause?
> A. I haven't done anything because I don't have that receptacle.
> Q. So you have not eliminated the receptacle?
> A. It is a possibility.

(Martin Dep., 72:24 – 4.)

#### b. The House Wiring

In addition to the receptacle located behind the refrigerator, Plaintiffs are also unable to eliminate the house wiring as a potential cause of this fire.

> Q. What about the house wiring inside the wall cavity, have you examined any of it?
> A. No.
> Q. So you are not able to opine whether it had any electrical activity or shorting or arcing?

9

> A. That is correct.
> Q. So you're not able to eliminate the house wiring as a potential contributor to the fire?
> A. That is true.

(*Id.*, 76:24 – 77:7.)

This is particularly significant because Plaintiffs' cause and origin expert specifically observed "evidence of melting or electrical shorting in much of the [electrical system] wiring" found in the fire debris. (July 22, 2010 Report of Larry Giggy, p. 9, **Exhibit E**.) However, none of this wiring was collected for further examination. In fact, Mr. Giggy did not even take a photograph of the house wiring he observed at the scene.

> Q. Did you take any photographs of the house wiring?
> A. . . . Other than this wiring around the electrical box, I didn't take any photographs of any other wiring.

(Giggy Dep., 39:6 – 11.)

The failure to eliminate at least two[3] possible alternate causes for this fire prevents Plaintiffs from using circumstantial evidence to prove a product defect.

## **CONCLUSION**

Based on the deposition testimony herein, the pleadings, and these suggestions in support, Whirlpool is entitled to summary judgment on Plaintiffs' claims and respectfully requests that the Court grant summary judgment in its favor on all causes of action.

SHOOK, HARDY & BACON, L.L.P.

By:/s/ Jason R. Scott
Jason R. Scott, #61200

---

[3] Whirlpool believes there are several alternate causes that were not fully eliminated as the cause of this fire. Because Whirlpool vehemently disagrees with Mr. Giggy's "area of origin" determination, Whirlpool's alternate causes span the entire house, including the house wiring, receptacles, power strips, electric furnace, the air handling system, other electric appliances like televisions, DVD players, clock radios…etc. However, for purposes of this motion for summary judgment, Whirlpool finds it sufficient that Plaintiffs have failed to exclude two very critical alternate causes within inches of the Whirlpool refrigerator alleged to be the cause of this fire.

2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547
jscott@shb.com

*Attorneys for Defendant Whirlpool Corporation*

I hereby certify that the above and foregoing was electronically filed and served by using the CM/ECF system on the 23rd day of May, 2011 to:

Paul Hasty, Jr.
HASTY & ASSOCIATES, LLC
7101 College Blvd., Suite 350
Overland Park, Kansas  66210

**ATTORNEY FOR PLAINTIFF RANDY RUSSELL AND ANTOINETTE RUSSELL**

By:/s/ Jason R. Scott_____
*Attorney for Defendant Whirlpool Corporation*